Matter of Malitz Family Trust v Angarola

2026 NY Slip Op 03168

May 20, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Malitz Family Trust, etc. Jeanne Malitz, petitioner/plaintiff-respondent- appellant,

v

Allison Angarola, objectant/defendant- appellant-respondent, et al., objectant/defendant. (File No. 391098/16)

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on May 20, 2026

2020-05008

Betsy Barros, J.P.

Paul Wooten

Janice A. Taylor

James P. McCormack, JJ.

Patricia Harold (Sweetbaum & Sweetbaum, Lake Success, NY [Joel A. Sweetbaum], of counsel), for objectant/defendant-appellant-respondent.

Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola, NY (David A. Bamdad, Allison A. Gatoff, and Ashwani Prabhakar of counsel), for petitioner/plaintiff-respondent-appellant.

[*1]

DECISION & ORDER

In a hybrid proceeding to compel the turnover of certain property and action for declaratory relief, the objectant/defendant Allison Angarola appeals, and the petitioner/plaintiff cross-appeals, from an order of the Surrogate's Court, Nassau County (Margaret C. Reilly, S.), dated May 13, 2020. The order, insofar as appealed from, denied those branches of the motion of the objectant/defendant Allison Angarola which were for summary judgment dismissing the petition/complaint with prejudice and, in effect, declaring that the Malitz Family Trust is revoked and that the objectant/defendant Allison Angarola is the owner of the subject property. The order, insofar as cross-appealed from, denied those branches of the cross-motion of the petitioner/plaintiff which were for summary judgment dismissing the objections to the petition and declaring that the Malitz Family Trust is not revoked and remains in full force and effect, to compel the turnover of the subject property to the petitioner/plaintiff and Jennifer Alt as co-trustees of the Malitz Family Trust, and to authorize the co-trustees of the Malitz Family Trust to sell the subject property.

ORDERED that the order is reversed insofar as appealed from, on the law, those branches of the motion of the objectant/defendant Allison Angarola which were for summary judgment dismissing the petition/complaint with prejudice and, in effect, declaring that the Malitz Family Trust is revoked and that the objectant/defendant Allison Angarola is the owner of the subject property are granted, and the matter is remitted to the Surrogate's Court, Nassau County, for entry of a decree, inter alia, declaring that the Malitz Family Trust is revoked and that the objectant/defendant Allison Angarola is the owner of the subject property; and it is further,

ORDERED that the order is affirmed insofar as cross-appealed from; and it is further,

ORDERED that one bill of costs is awarded to the objectant/defendant Allison Angarola payable by the petitioner/plaintiff personally.

In February 2006, Muriel Malitz (hereinafter the grantor) created the Malitz Family [*2]Trust (hereinafter the trust), naming her daughters the petitioner/plaintiff, Jeanne Malitz (hereinafter the petitioner), and Jennifer Alt (hereinafter Jennifer, and together with the petitioner, the co-trustees) as co-trustees and funding the trust with the family residence (hereinafter the property), plus shares of stock and cash. Under Article THIRD of the trust, upon the grantor's death, the co-trustees were to convey the entire interest in the property in equal one-fifth shares to five of the grantor's six children, i.e., the petitioner, Jennifer, the objectant/defendant Allison Angarola (hereinafter Allison), Michael Malitz (hereinafter Michael), and the objectant/defendant Christina Malitz (hereinafter Christina). Article FOURTH divided the remaining trust proceeds equally among all six of the grantor's children, i.e., the petitioner, Jennifer, Allison, Michael, Christina, and a sixth sibling who is not a party to this appeal.

The trust expressly reserved to the grantor a power to "change the percentage of distribution among the class of beneficiaries either while she is alive or by testamentary directive." The trust further required that any such change be "in writing delivered to the Trustee" and otherwise stated that the trust was irrevocable and that the grantor had no power to change the class of beneficiaries.

On February 11, 2015, the grantor executed an amendment purportedly granting Allison a right of first refusal to purchase the property at an appraised price and allocating 100% of the property's sale proceeds and 100% of the remaining trust proceeds to Christina. The same day, the grantor and Christina executed a document entitled "REVOCATION OF TRUST, MALITZ FAMILY TRUST" (hereinafter the revocation document), which stated that the trust was being revoked pursuant to EPTL 7-1.9 and directed the co-trustees to return the trust assets to the grantor.

The grantor's estate planning attorney sent the co-trustees two letters, both dated February 11, 2015, one stating that the grantor "is revoking the Malitz Family Trust in accordance with NYS Law"and enclosing a deed for the co-trustees to execute conveying title to the property to the grantor, and the other indicating that the grantor had "designated [her] daughter, Christina Louise Malitz, as the sole beneficiary" before revoking the trust.

By deed dated February 19, 2015 (hereinafter the February 2015 deed), executed by the co-trustees, title to the property was conveyed from the Malitz Family Trust to the grantor. The deed recited that "as a result and in concurrence with the revocation of the Malitz Family Trust," the co-trustees were restoring the trust assets to the grantor. The co-trustees also returned signed ancillary papers for recording the deed.

Thereafter, by deed dated May 2, 2016 (hereinafter the May 2016 deed), the grantor conveyed the property to Allison. The grantor died in September 2016.

In June 2017, the petitioner commenced this hybrid proceeding to compel the turnover of the property to the co-trustees and action for a judgment declaring that the trust is not revoked and remains in full force and effect, alleging that the co-trustees were never presented with a copy of the revocation document. However, the petitioner acknowledged that "[a]s a result of the alleged revocation and at the direction of [the grantor's estate planning attorney], the co-Trustees executed a deed transferring the Property back to the Grantor."

Allison filed an answer and objections, asserting affirmative defenses, among other things, of waiver and estoppel. Christina and Michael also filed objections.

Allison moved, inter alia, for summary judgment dismissing the petition/complaint with prejudice and, in effect, declaring that the trust is revoked and that Allison is the owner of the property. The petitioner cross-moved, among other things, for summary judgment dismissing the objections to the petition and declaring that the trust is not revoked and remains in full force and effect, to compel the turnover of the property to the co-trustees, and to authorize the co-trustees to sell the property. Jennifer filed an affidavit in support of the petitioner's cross-motion, denying the receipt and delivery of the revocation document. In an order dated May 13, 2020, the Surrogate's Court, inter alia, denied those branches of Allison's motion and those branches of the petitioner's [*3]cross-motion. Allison appeals, and the petitioner cross-appeals.

The Surrogate's Court determined that the grantor had the right to amend the trust to name Christina as the sole beneficiary of the trust since "[i]n accordance with the clear language of the Trust, the decedent retained the right to alter the percentage of distribution among the beneficiaries, even to the point of altering the interest of a beneficiary to zero percent." The court further noted that under EPTL 7-1.9, an irrevocable trust could be revoked upon the acknowledged consent of all persons beneficially interested in the trust—in this case, with the consent of Christina.

"A trust instrument is to be construed as written, and the grantors' intention is to be determined solely from the unambiguous language of the instrument itself" (Matter of Arline J. [James J.—Falasco], 174 AD3d 604, 606). Here, the question of law presented to the Surrogate's Court was whether the grantor had the authority to change the percentages inherited by members of the class of beneficiaries to zero percent. A provision authoring an amendment of the amount or proportion of a trust estate which shall form the trust fund for any child or grandchild permits the grantor to amend the trust to exclude a child or grandchild, since "there is actually no substantial difference in the end result whether the settlor entirely excludes a child or modifies the amount of his share to a mere nominal amount" (Matter of Woodward, 284 App Div 459, 463). Therefore, the grantor could reduce a beneficiary's share to zero percent and was not constrained to reduce a beneficiary's share to some nominal amount.

In substance, the revocation of the trust was properly effected. The revocation document granted Allison a right of first refusal to purchase the property but she never exercised that right. Since the right of first refusal was never exercised, it, therefore, lapsed, with no objection from Allison. Nonetheless, Allison is the current owner of the property pursuant to the May 2016 deed.

The Surrogate's Court determined that there was a triable issue of fact as to whether the revocation document was delivered to the co-trustees. The petitioner contends that the revocation document did not comply with EPTL 7-1.9, which provides that "(a) Upon the written consent, acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property, of all the persons beneficially interested in a trust of property, heretofore or hereafter created, the creater of such trust may revoke or amend the whole or any part thereof by an instrument in writing acknowledged or proved in like manner, and thereupon the estate of the trustees ceases with respect to any part of such trust property, the disposition of which has been revoked. If the conveyance or other instrument creating a trust of property was recorded in the office of the clerk or register of any county of this state, the instrument revoking or amending such trust, together with the consents thereto, shall be recorded in the same office of every county in which the conveyance or other instrument creating such trust was recorded" (emphasis added).

The co-trustees executed the February 2015 deed conveying the property from the trust to the grantor and cited the revocation of the trust therein. The record indicates that a deed from the grantor to the co-trustees, which was executed in 2006, was recorded. Similarly, the February 2015 deed was also recorded. The February 2015 deed stated that it was executed "as a result and in concurrence with the revocation" of the trust. Therefore, the co-trustees had notice of the revocation of the trust, and notice was given to third parties through the recording of the February 2015 deed, which noted that there was concurrence with the revocation of the trust.

Further, the petitioner is equitably estopped from challenging the revocation of the trust. "The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted" (Matter of Shondel J. v Mark D., 7 NY3d 320, 326). "The law imposes the doctrine as a matter of fairness" (id.). "Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position" (id.). Here, after the execution by the co-trustees of the February 2015 deed, the grantor changed her position when she conveyed the property to Allison in the May 2016 deed. If the grantor had been alerted to the co-trustees' objections when she was alive, she [*4]could have rectified any alleged procedural errors.

"A waiver is the voluntary abandonment or relinquishment of a known right" (Matter of Georgetown Unsold Shares, LLC v Ledet, 130 AD3d 99, 103 [internal quotation marks omitted]). "A known right may not be waived except when there is an intention to do so" (id. at 103-104). "A waiver occurs when there is such conduct or failure to act as to evince an intent not to claim the purported advantage" (id. at 104 [internal quotation marks omitted]). Waiver "should not be lightly presumed" (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [internal quotation marks omitted]). Here, the petitioner's execution as a co-trustee of the February 2015 deed, conveying title of the property to the grantor, relinquished the petitioner's right to the property and waived the contentions she raises on appeal.

Further, "[t]he essence of the equitable defense of laches is prejudicial delay in the assertion of rights" (Stein v Doukas, 98 AD3d 1026, 1028). "To establish laches, a party must show: (1) conduct by an offending party giving rise to the situation complained of, (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant" (id. [internal quotation marks omitted]). Here, the co-trustees created the situation complained of by executing the February 2015 deed without complaint, delayed asserting their claims until after the grantor's death, never revealed their complaints until after the grantor's death, and inflicted injury by attempting to deprive the grantor and Allison, as the grantee, of the property. Therefore, the defense of laches is also applicable herein.

Accordingly, under the particular circumstances of this case, those branches of Allison's motion which were for summary judgment dismissing the petition/complaint with prejudice and, in effect, declaring that the trust is revoked and that Allison is the owner of the property should have been granted.

The parties' remaining contentions either are without merit or need not be addressed in light of our determination.

Since this is, in part, a declaratory judgment action, we remit the matter to the Surrogate's Court, Nassau County, for the entry of a decree, inter alia, declaring that the trust is revoked and that Allison is the owner of the property (see Lanza v Wagner, 11 NY2d 317, 334).

BARROS, J.P., WOOTEN, TAYLOR and MCCORMACK, JJ., concur.

ENTER:

Darrell M. Joseph

Clerk of the Court